Jackson, Circuit Judge.
The libel in this case was filed to recover the value of the barge Mears, of which libelants were the owners, and which was lost on November 27, 1889, while being towed by the propeller Wilhelm, on a voyage from Cheboygan, Mich., to Buffalo, N. Y. It is claimed in the libel that the Mears was lost through the negligence of the propeller or of those navigating her. The special acts of negligence and of careless and unskillful towage alleged against said propeller are: (1) That said propeller Wilhelm was not properly officered and manned; (2) that said propeller attempted to tow said schooners Mears and Midnight across Lake Huron during a violent and increasing storm, without regard to the condition of wind, weather, and sea, and the indications of the weather existing after passing Thunder Bay light, instead of taking said tow to a near, accessible, and safe shelter in Thunder bay, as she could have done without difficulty, and as was required by ordinary care and seamanship; (3) in negligently failing to come about and hold her said tow head into the wind and seas after the loss of said propeller’s deck load; (4) in negligently hugging the west shore of Lake Huron in a thick, driving snowstorm, and with a heavy wind and sea from the eastward; and (5) in negligently turning at full speed into the lake so sharply as to part the towline of said Mears, whereby said schooner was necessarily ren *603 dered helpless in such close proximity to a lee shore that her destruction thereafter was inevitable. The answer denies the faults alleged against the propeller, and denies that the Mears was lost by reason of any negligence or want of care on the part of the Wilhelm.
A statement of the facts as found by the district court, and on which the libel was dismissed, is contained in the opinion of the district judge, reported in 47 Fed. Rep. 89, and is as follows:
“At 4 a. m., November 27th, the tow passed Thunder bay, at which time the weather was unsettled, wind from the eastward, and the sea moderate. About 7 o’clock [a. m.] the tow was struck by a heavy squall from about E. N. E., accompanied by snow, and from that time until the loss of the barges on Fish point, at about 2 o’clock p. m., the wind blew a gale from E. N. E. to N. E., accompanied by frequent squalls and a heavy sea. At about 9 A. M., when off Sturgeon point, the Wilhelm lost her starboard deck load, causing her to list so much to port as to interfere with her steering, at which time a cast of her lead gave six fathoms of water; whereupon she rounded to and headed the wind, until her cargo was trimmed to right her, when she went off upon her course, which was a little to windward of the usual running course to Tawas. About 1:30 p. m. a cast of the lead gave six fathoms. A blinding snow storm was then raging, and the master of the Wilhelm, deeming himself far enough to the southward until he could ascertain his exact position, decided to haul into the wind, and hold thereuntil it broke, so he could pick up the land. After rounding to, and while holding head to wind and sea, the line between the Mears and Wilhelm parted, and both schooners were driven on shore near Eish point, and became total wrecks.”
The district court made no express or direct finding upon the first fault alleged against the Wilhem, viz., that she “was not properly officered and manned.” The evidence in the case not only fails to support this charge, but clearly establishes the contrary.
The court below found that the Wilhelm was guilty of no fault or want of proper care and prudence in failing to carry her tow into Thunder bay. This finding is sustained by the testimony in the case. The proof fails to show that the indications of rough and stormy weather were so clear and unmistakable when passing Thunder Bay light and Thunder bay that ordinary prudence and good seamanship required the Wilhelm to take shelter in said bay with her tow. The storm which endangered the safety of the Wilhelm and her tow was encountered in its severity about 9 a. m., when the propeller had passed many miles beyond the point for turning into Thunder bay. She had, in fact, traversed about 26 miles of her voyage towards Tawas, which is about 60 miles from Thunder Bay light. Under such circumstances and conditions, there was no duty on the part of the propeller to turn back in the face of the storm, and attempt to seek shelter in Thunder bay.
Counsel for libelants insist that the district court proceeded upon a wrong theory or unsound principle in reaching this conclusion. It is urged that the opinion of the district judge practically makes or holds the decision of the master of the Wilhelm to continue his voyage instead' of taking shelter in Thunder bay conclusive on the court; that is to say, that the exercise of his judgment and discretion as to pursuing his voyage instead of seeking shelter in said bay could not be inquired into or *604 be condemned by the court. We do not understand the learned district judge as having laid down any such broad proposition, or that he intended in any way to dispute the well-settled rule that, while the law does not impose upon the towing boat the obligation resting upon a common carrier, it does require upon the part of the persons engaged in her management the exercise of reasonable care, caution, and maritime skill; and, if these are neglected, and disaster occurs, the towing boat must be held liable for the consequences. The language employed by the trial judge, as we read it, was not meant to question or disregard this general rule, hut simply to assert that there was nothing in the state of the weather, the season, the situation of the tow, and all the attendant circumstances, to show that the master’s determination to proceed on his voyage was, at the time, either improper, reckless, or wanting in proper nautical skill and judgment. Limited and applied to the facts of the case before him, the language of the opinion is not open to criticism. We concur fully with the district judge in the conclusion reached by him on this point,—that the evidence fails to establish any fault or negligence on the part of the Wilhelm in passing Thunder bay, or in' his failure to turn back to said bay after encountering the storm.
The next fault charged against the Wilhelm is that, after heading to the wind to trim and right herself in consequence of the loss of her starboard deck load, when off Sturgeon point, she did not hold her tow in that position until the storm abated. The court below held, and, as we think, properly, that, having rounded to for the purpose of righting herself and readjusting her deck load, so that she could be properly steered and managed, the Wilhelm could resume her voyage without being chargeable with negligence. The storm was of uncertain duration, and she and her tow were greatly exposed, and we fail to perceive wherein she should be condemned for continuing her voyage towards her port of destination, where safe shelter was to be found.
The allegation that the propeller negligently hugged the west shore of Lake Huron too closely in the prevailing storm is not sustained by the proof, or at any rate the proof does not so preponderate in that direction as to warrant this court in revising the finding of the district court to the contrary.
The alleged fault of the Wilhelm in turning at full speed into the lake when off Fish point, where the towline of the Mears was parted, and her loss thereby occasioned, is the act of negligence on the part of the propeller most earnestly insisted on before this court. The court below found that the second rounding to the wind was accomplished not at full speed, but after the.speed of the.propeller had been slackened down; that it was performed carefully, and in a proper manner; that it was a proper maneuver under the circumstances; that, “after rounding to, and while holding head to wind and sea, the line between the Mears and Wilhelm parted.” While there is. some conflict in the evidence as to the time and circumstances when and under which the tow line parted, we cannot say that the court below has failed to reach a correct conclusion therefrom. Those in the best position to know the facts sustain the *605 lower court’s finding. We concur with the district judge in the opinion that the parting of the towline was not caused by any improper movement, or undue speed, on the part of the propeller in rounding to the second time about 1:30 or 2 p. m., but that said parting of the towline-was caused by the force and violence of the storm, without fault or negligence on the part of the Wilhelm or of her officers. It follows, therefore, that the decree of the court below should be affirmed, with costs of this court and the lower court to be taxed against libelants, and it is-accordingly so ordered and adjudged.